# United States Court of Appeals

## For the First Circuit

No. 05-2549

IN RE: NOREEN E. NASH,

Debtor.

_____

NOREEN E. NASH,

Plaintiff, Appellant,

v.

CONNECTICUT STUDENT LOAN FOUNDATION,
NEW HAMPSHIRE HIGHER EDUCATION ASSISTANCE FOUNDATION,
AND UNITED STATES DEPARTMENT OF EDUCATION,

Defendants, Appellees.

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
[Hon. George A. O'Toole, Jr., U.S. District Judge]

_____

Before
Howard, Circuit Judge,
Coffin and Campbell, Senior Circuit Judges.

_____

Joseph S.U. Bodoff with whom Bodoff & Slavitt LLP was on brief for appellant.
Susan Maxson Lyons, Attorney, Appellate Staff, with whom William Kanter and Robert M. Loeb, Attorneys, Appellate Staff, and Peter D. Keisler, Assistant Attorney General, were on brief for U.S. Department of Education.
Mark F. Weaver with whom Ford, Weaver & McDonald, PA, was on brief for New Hampshire Higher Education Assistance Foundation.
R. Richard Croce for Connecticut Student Loan Foundation.

_____

April 26, 2006

_____

**COFFIN, <u>Senior Circuit Judge</u>.** Appellant is the debtor in a Chapter 7 bankruptcy proceeding. The total indebtedness revealed by her bankruptcy schedules was approximately $285,000; of this amount, some $140,000 consisted of student loans, made or guaranteed by state student loan foundations, universities, and the United States Department of Education. This appeal stems from an adversary proceeding brought by appellant against these entities in the bankruptcy court of the District of Massachusetts, seeking discharge of her education loans, under 11 U.S.C. § 523(a)(8), on the ground that repaying the debts would impose an "undue hardship" on her.[1]

The bankruptcy judge ruled that appellant had not carried her burden of showing "undue hardship." The judge based her conclusion on the absence or inadequacy of evidence on three points: appellant's long-term prognosis, the effects over time of therapy and medication, and the effects of her mental condition on her employment prospects. The judge added a finding that appellant had not made a good faith attempt to repay her loans. In affirming, the district judge endorsed both the good faith finding and the conclusion "that Nash had not shown that her disability was likely to continue for such a period of time that she could not reasonably

---

[1] In relevant part, 11 U.S.C. § 523(a)(8) provides that a discharge in bankruptcy does not discharge a debtor from a specified class of student loan debt "unless excepting such debt from discharge . . . will impose an undue hardship on the debtor . . . ."

be expected to repay the education loans in the future." See Nash v. Conn. Student Loan Found., 330 B.R. 323, 327 (D. Mass. 2005). For reasons we shall explain, we affirm without reaching the issue of good faith.

## I. The Legal Setting

In the course of the proceedings to this point, there has been much attention given to the particular test which should be applied to determine "undue hardship." Congress did not attempt to give specific guidance. We as a circuit have not had occasion to declare our views.

Appellees would have us join the nine circuit courts of appeal that have followed the Second Circuit's test set forth in Brunner v. New York State Higher Educ. Servs. Corp., 831 F.2d 395 (2d Cir. 1987) (per curiam). This is a tripartite test, requiring that the debtor show inability, at her current level of income and expenses, to maintain a "minimal" standard of living; the likelihood that this inability will persist for a significant portion of the repayment period; and the existence of good faith efforts to repay the loans. Id. at 396.

A facially different test is the Eighth Circuit's totality-of-circumstances test, which would have courts consider the debtor's reasonably reliable future financial resources, his reasonably necessary living expenses, and "any other relevant facts." See Long v. Educ. Credit Mgmt. Corp. (In re Long), 322 F.3d 549, 554

(8th Cir. 2003). Appellant contends that this test does not include "good faith effort" under the "other relevant facts" rubric, although bankruptcy courts within the Eighth Circuit are not unanimous on this issue. She urges a "true totality of the circumstances test," focusing solely on the ability of the debtor to maintain a minimal standard of living now and in "the foreseeable future" and still afford to make loan repayments.

The bankruptcy judge, citing her opinion in Burkhead v. United States (In re Burkhead), 304 B.R. 560, 565 (Bankr. D. Mass. 2004), applied the totality approach but was of the view that courts essentially looked at the same factors under either test. She listed four relevant factors, including good faith efforts. The district judge noted the unadorned breadth of the statutory language, which he felt pointed to the totality test as "the default standard for all judging," and found that the care and methodical approach of the bankruptcy judge was "proper employment of a 'totality-of-the-circumstances' test, which is another way of saying it was proper judging." See 330 B.R. at 326-27.

We see no need in this case to pronounce our views of a preferred method of identifying a case of "undue hardship." The standards urged on us by the parties both require the debtor to demonstrate that her disability will prevent her from working for the foreseeable future. Appellant has a formidable task, for Congress has made the judgment that the general purpose of the

-4-

Bankruptcy Code to give honest debtors a fresh start does not automatically apply to student loan debtors. Rather, the interest in ensuring the continued viability of the student loan program takes precedence. TI Fed. Credit Union v. DelBonis, 72 F.3d 921, 937 (1st Cir. 1995). Moreover, the judgment of the bankruptcy court, which is the focus of our review, see Groman v. Watman (In re Watman), 301 F.3d 3, 7 (1st Cir. 2002), was not a summary judgment adverse to appellant; it was a decision reached after trial and, as the district judge properly noted, that court's findings of fact must stand if reasonably supported. See McMullen v. Sevigny (In re McMullen), 386 F.3d 320, 329 (1st Cir. 2004). The ultimate question of law – whether appellant proved "undue hardship" – is subject to de novo review. Tirch v. Penn. Higher Educ. Assistance Agency (In re Tirch), 409 F.3d 677, 680 (6th Cir. 2005); Martin v. Bajgar (In re Bajgar), 104 F.3d 495, 497 (1st Cir. 1997).

Taking this view of the case, we need not consider the issue of good faith effort to repay; nor need we review the evidence concerning appellant's use and retention of her income and assets, or her failure to utilize available avenues of assistance to minimize the impact of repayment. We also emphasize that our conclusion that this record is insufficient to carry the day does not foreclose appellant from a future effort, buttressed with more persuasive support.

## II. Factual Background

Appellant's higher education and employment history, from her graduation with honors from Dartmouth in 1984 to her attendance at the University of Michigan Law School a decade later, was one of high achievement. From 1984 to 1990, she worked for a leading publishing house, an international non-profit educational organization, and the United Hospital Fund of New York, moving upward steadily from editorial assistant to assistant and then to associate editor, and finally to the position of public information officer of the Hospital Fund. During this period she remained current in her student loan repayments.

In 1990 she entered Yale Management School, receiving in 1992 what is now considered an MBA degree. On graduating, she was employed by Prudential Securities as an investment banker in healthcare and higher education finance, eventually being promoted to a position as vice president in the municipal bond department, with a salary of $120,000.

Appellant then carried out a decision reached two years earlier and entered the University of Michigan Law School in 1994, where she took a full course load and also worked as a research assistant for four professors. During her first year, she found she was having difficulty focusing. A psychiatrist treated her with medication for manic/depressive symptoms. During the summer of 1996, after her second year, she worked for a large law firm in

Washington, D.C., but was unable to concentrate and to finish assignments. During her third year, she felt obliged to withdraw from law school and did some work as a telemarketer. She ceased this work in December 1997. Subsequently, the Social Security Administration determined that she had been disabled since December 1, 1997. She has not worked regularly since then, and has been diagnosed with bipolar disorder. She is under the care of a pair of doctors, Dr. Ronningstam and Dr. Mallya.

Appellant filed a voluntary petition under Chapter 7 of the Bankruptcy Code in September 2002. All debts other than her student loans were automatically discharged, and she then filed the complaint underlying this appeal seeking discharge of the student loans on the ground of undue hardship, under section 523(a)(8) of the Bankruptcy Code.

III. <u>Discussion</u>

Under any test assessing eligibility for discharge of student loan debt, appellant must show that her current inability to maintain a minimal standard of living if forced to repay the debt will continue into the future. We thus come to the issue we have isolated as the key to decision in this appeal: does the record support the bankruptcy judge's holding that appellant did not establish that her disability would continue to prevent her from remunerative work?

The judge used various phrases to characterize the duration of the incapacity that appellant needed to demonstrate. Nash seizes on the judge's choice of language such as this passage reveals: "The Debtor did not establish that it [is] more likely than not that her mental condition will disable her indefinitely. There was no admissible evidence to support a finding that Ms. Nash's disorder permanently disables her from employment." (Emphasis in original.) Appellant argues that this statement sets the bar higher than is required even by Brunner, which requires only that the evidence of disability endure for a significant portion of the repayment period or for the reasonably foreseeable future. See 831 F.2d at 396.

What is revealed by the context of the judge's remarks, however, is that her decision did not turn on the projected length of appellant's disability, but on the total absence of any reliable evidence of future inability to work. The sentences we have quoted were immediately preceded by the following:

> There was a dearth of evidence on the Debtor's prognosis, the effect of medication on her condition, and her employment prospects. Ms. Nash submitted no evidence of her long-term prognosis. It is unclear whether therapy and medication will improve Ms. Nash's mental condition over time.

Moreover, prior to the passage quoted, the judge had referred in her opinion to another case involving bipolar disorder, where expert testimony concluded with the prognosis that "it is more likely than not that the debtor's debilitating condition will

persist for a significant portion of the repayment period." See Kelsey v. Great Lakes Higher Educ. Corp. (In re Kelsey), 287 B.R. 132, 144 (Bankr. D. Vt. 2001). This analysis, of course, is the same formula endorsed by appellant. We think that the district judge was justified in characterizing the bankruptcy court decision as consistent with this formulation. In any event, we analyze the record, applying the lowest threshold and searching it for any compelling evidence of the disabling condition persisting for the foreseeable future.

A major weakness in appellant's case, in contrast to Kelsey, was her failure to call any of her doctors to testify. Nor did she appeal the court's exclusion of the expert prognosis in her medical records, an action apparently taken for procedural reasons. The state of the evidence at the conclusion of trial on January 23, 2004 was as follows.

Dr. Ronningstam's last report, dated April 17, 2003, states that appellant suffers from bipolar II disorder, which includes "episodes of major depression and episodes of elevated mood and energy, but without mania." The condition disables her cognitive functioning, endurance, and ability to concentrate. Tasks may leave her feeling exhausted, lacking energy, having trouble sleeping. Sometimes her thought processes go too fast, leaving her head "spinning." She is sensitive to stress and easily tearful.

Appellant added her agreement to these findings, adding that there are days when she cannot get out of bed. She also referred to two Temporary Total Disability Deferment Request forms, signed by Dr. Mallya and stating that she is disabled with bipolar disorder. These, however, do not indicate extensive duration of total disability. The forms specifically carry the notation that "[t]his disability is temporary" and that the debtor understands that limitation. On the request dated July 23, 2002, the certificate of the signing doctor stated that the length of the disabling condition was "undetermined"; on the other, dated June 6, 2002, the entry as to duration is "unknown." Appellant felt that she could not apply for an administrative discharge of her loans based on a permanent total disability because she retained the capacity, at least sporadically, to earn small amounts of income.

Appellant's testimony, beyond affirming her doctors' report, varied. She stated that she felt fine on some days, but that she "fluctuate[d] hugely," that she had become in the past couple of years "more stable," that "my life is much better now." She stated that she could not commit to working five days a week but would like to "make money when I can." Asked about her prognosis, she replied that, at age 41, her chances of "stabilizing continuously are not very good," but acknowledged that her medications helped keep her from feeling "completely out of control." She was

following a regimen of seeing Dr. Ronningstam three times a week and Dr. Mallya once a week.

The specific question we face is whether, on this record, where the illness is bipolar disorder, where we have no prognosis from treating physicians or other experts, where the testimony of appellant herself as to the future is necessarily speculative, the bankruptcy court supportably found that appellant had not carried her burden of proving a sufficient likely future period of unemployability.

Appellant's perception of her case, as reflected by counsel in oral argument, is essentially that one would not insist on expert testimony if the debtor appeared in court in a wheelchair. Putting to one side the observation that such a physical disability does not in any way correlate to the ability to maintain demanding and responsible employment, bipolar disorder is a rubric covering many conditions, many kinds of treatment, and many levels and durations of disablement. Appellant's last diagnosis was bipolar II disorder. A booklet issued by the National Institute of Mental Health, cited by the government, describes the levels of the disorder as follows:

> The classic form of the illness, which involves recurrent episodes of mania and depression, is called **bipolar I disorder.** Some people, however, never develop severe mania but instead experience milder episodes of hypomania that alternate with depression; this form of the illness is called **bipolar II disorder.**

(Bold in original.)

-11-

The booklet holds out the likelihood that people with bipolar disorder may lead productive lives with proper treatment. The records indicate that the illness afflicting appellant is not its most severe form. In addition, we note that on January 27, 2003, only seven weeks before the most recent evaluation on record, Dr. Runningstam recorded a diagnosis of "Bipolar Disorder II/III." Whether this means that appellant's condition bordered on an even less disabling form of the illness we do not know. But we are confident that the bankruptcy judge did not commit any error of law or clear error of fact in finding a lack of sufficient evidence of the likely duration of appellant's inability to work.

A case remarkably similar on its facts to this one is Shilling v. Sallie Mae Servicing Corp. (In re Shilling), 333 B.R. 716 (Bankr. W.D. Pa. 2005). The debtor had obtained a bachelor's degree in psychology before being adjudged disabled with a "severe bipolar disorder" by a Social Security administrative law judge. Id. at 720. As in the instant case, the debtor submitted no expert evidence to supplement her own prognosis. The court stated:

> While we might give considerable weight to the opinion of a qualified expert concerning the expected duration of debtor's psychological disorders, debtor herself does not qualify as an expert in such matters. Moreover, because she is caught in the maelstrom of her psychological problems, debtor is not in a position to offer an objective and informed opinion concerning her future psychological condition, one that would withstand scrutiny.

-12-

Id. at 722.  We cannot fault the bankruptcy judge in this case for taking a similar position.  See generally Burton v. Educ. Credit Mgmt. Corp. (In re Burton), Nos. 04-53297-SCS, 05-5016-SCS, 2006 WL 802885 (Bankr. E.D. Va. Jan. 11, 2006) (discussing cases addressing the need for corroborating medical evidence on prognosis of disabling condition).

This does not mean the end of the road for appellant.  If her condition justifies it, she may be successful in securing an administrative discharge on the basis of total and permanent disability.  See 34 C.F.R. § 682.402(c)(15); 34 C.F.R. § 685.213(a).  In any event, our decision today does not bar appellant from making another, more adequately supported request for discharge.  See 11 U.S.C. § 523(b); see also Storey v. Nat'l Enter. Sys. (In re Storey), 312 B.R. 867, 875 (Bankr. N.D. Ohio 2004).[2]

Affirmed.

---

[2] Section 523(b) states, in relevant part: ". . . [A] debt that was excepted from discharge under subsection . . . (a)(8) . . . in a prior case . . . is dischargeable in [a new action] unless, by the terms of subsection (a) of this section, such debt is not dischargeable . . . ."