**Denise Megan BRONSDON, Debtor.**

**Denise Megan Bronsdon,
Plaintiff–Appellee,**

v.

**Educational Credit Management
Corporation, Defendant–
Appellant.**

**BAP No. MB 10–009.
Bankruptcy No. 07–14215–FJB.
Adversary Proceeding No.
08–01062–MSH.**

United States Bankruptcy Appellate Panel
of the First Circuit.

Sept. 21, 2010.

John F. White, Esq., and Troy A. Gunderman, Esq., on brief for Defendant–Appellant.

Denise M. Bronsdon, Pro Se, on brief for Plaintiff–Appellee.

Before HAINES, LAMOUTTE, and TESTER, United States Bankruptcy Appellate Panel Judges.

LAMOUTTE, Bankruptcy Judge.

This appeal arises out of an adversary proceeding filed by Denise Bronsdon (the "Debtor") seeking to discharge her student loan obligations to Educational Credit Management Corporation ("ECMC") on the grounds of undue hardship pursuant to § 523(a)(8).[1] The bankruptcy court initially concluded that repayment of the student loans would impose an undue hardship on the Debtor and discharged the loans.[2] On appeal, the U.S. District Court for the District of Massachusetts (the "district court") vacated the bankruptcy court's decision and remanded the matter to the bankruptcy court to consider the impact that participation in the William D. Ford

---

1. Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109–8, 119 Stat. 23, 11 U.S.C. §§ 101, *et seq.*

2. *See Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon),* Adv. Pro. No. 08–1062, 2009 WL 95038, 2009 Bankr.LEXIS 69 (Bankr. D.Mass. Jan. 13, 2009).

Federal Direct Loan Program (the "Ford Program") would have on the undue hardship analysis.[3] On remand, the bankruptcy court concluded that the Debtor's failure to participate in the Ford Program was insufficient to overcome a finding of undue hardship under § 523(a)(8), and again discharged the loans.[4] ECMC appealed.

For the reasons set forth below, we **AFFIRM.**

## BACKGROUND

### A. The Debtor's Personal Background

At the time of trial in January 2009, the Debtor was 64 years old and single. She did not have any dependents nor did she suffer from any disability or debilitating medical condition. In 1994, the Debtor, at the age of 50, received a bachelor's degree in English from Wellesley College. Thereafter, from 1996 until 2002, she worked at various jobs as a legal secretary until she decided to go to law school. She enrolled in Southern New England School of Law, and graduated in the top half of her class in December 2005. To finance her law school education, the Debtor took out the student loans now at issue, which at some point were assigned to ECMC. As of September 8, 2008, the loans totaled $82,049.45.

After law school, the Debtor failed the bar exam three times, each time by a significant margin. She does not plan to take the bar exam again because she has no money to pay for the exam fee or preparation materials, and because she has not come close to passing.

After graduating from law school, the Debtor worked briefly as a receptionist and as a temporary patent prosecution secretary at two different law firms. Although she continually went on interviews, made telephone calls, and spoke with employment agencies in an effort to find any kind of secretarial, receptionist, or contract manager work, she was unable to find employment. The Debtor pursued alternate means of earning income, but her attempts were unsuccessful.[5] At the time of trial, the Debtor's only income was a monthly Social Security payment of $946.00. She owned no real property and lived temporarily in her father's house.

### B. Procedural History

The Debtor filed a chapter 7 petition in July 2007, and received a discharge in December 2007. Thereafter, the Debtor filed an adversary complaint seeking to discharge her student loan obligations to ECMC.[6] At ECMC's request, the bankruptcy court took judicial notice of the Ford Program, 34 C.F.R. §§ 685.100, *et seq.* The Ford Program offers, among other things, a student loan consolidation repayment option known as the income contingent repayment plan (the "ICRP").

3. *See Educ. Credit Mgmt. Corp. v. Bronsdon,* 421 B.R. 27 (D.Mass.2009).

4. *Seè Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon),* Adv. Pro. No. 08–1062, 2010 WL 147798, 2010 Bankr.LEXIS 71 (Bankr. D.Mass. Jan. 8, 2010).

5. For example, the Debtor wrote a novel but was unable to find a publisher. She also applied for a patent on an invention to protect the privacy of hospital patients. At the

time of trial, the Debtor had not received a response regarding the patent, and was considering writing another novel or starting a website that would feature commentary on current events.

6. The original complaint was filed against "Sallie Mae, Inc." However, the bankruptcy court subsequently granted ECMC's motion to intervene and be substituted as the defendant in the proceeding.

After a trial, the bankruptcy court issued an order and decision (the "First Decision") discharging the debts owed to ECMC. In the First Decision, the bankruptcy court applied a totality of the circumstances test to determine whether the Debtor would suffer an undue hardship. 2009 WL 95038, at *2–3, 2009 Bankr.LEXIS 69, at *7. In applying this standard, the bankruptcy court found that, given the Debtor's lack of recent work history, narrow work experience, failure to pass the bar exam, age, unsuccessful attempts to find employment in a variety of fields, and unsuccessful attempts to sell a novel and acquire a patent, the Debtor had no reasonably reliable future financial resources other than the Social Security payments. *Id.* at *4–5, 2009 Bankr.LEXIS 69, at *12–14.

The bankruptcy court also recognized that if the Debtor participated in the Ford Program, her current financial status would not require monthly payments. *Id.* at *4, 2009 Bankr.LEXIS 69, at *11. It rejected ECMC's argument that repayment would not cause the Debtor an undue hardship because the Debtor would not be required to make monthly payments under the program. The bankruptcy court stated that if the Debtor were to participate in the Ford Program, "the student loan forgiveness at the conclusion of her participation in the program would result in a tax liability that would subject the Debtor's Social Security benefits to garnishment," which would "promote a vicious cycle that could leave the Debtor in a financial state much more desperate than the one she is currently enduring." *Id.* Additionally, the bankruptcy court referred to its reasoning in *In re Denittis,* 362 B.R. 57, 64–65 (Bankr.D.Mass.2007), in which it concluded that consideration of the Ford Program in the undue hardship analysis would, in effect, foreclose a conclusion of undue hardship whenever a debtor is eligible to participate. *Bronsdon,* 2009 WL 95038, at *4, 2009 Bankr.LEXIS 69, at *11.

On appeal to the district court, ECMC contested the bankruptcy court's factual findings regarding the Debtor's good faith efforts to find work and that she was not likely to earn income in the future. ECMC also argued that the bankruptcy court made errors of law concerning the ICRP. At the outset, the district court noted the two tests for determining undue hardship, but stated that the test to be applied was not a material issue in this case as the result was the same under both tests. The district court then determined that there was ample evidence supporting the bankruptcy court's factual findings and, therefore, that the findings were not clearly erroneous. It also concluded that the bankruptcy court had made a legal error by "giving no weight to the ICRP in the undue hardship analysis." As a result, the district court vacated the First Decision and remanded the matter to the bankruptcy court to consider the impact that participating in the ICRP would have on the undue hardship analysis.

On remand, the bankruptcy court concluded that "the Debtor's failure to participate in the ICRP [wa]s insufficient to demonstrate a lack of good faith (again assuming such finding is integral to the test under § 523(a)(8)) when weighed against this Debtor's efforts to try to improve her financial circumstance," and ordered that the student loans owed to ECMC were discharged. This appeal ensued.

## JURISDICTION

Before addressing the merits of an appeal, the Panel must determine that it has jurisdiction, even if the issue is not raised by the litigants. *See Boylan v. George E. Bumpus, Jr. Constr. Co. (In re George E.*

*Bumpus, Jr. Constr. Co.)*, 226 B.R. 724 (1st Cir. BAP 1998). The Panel has jurisdiction to hear appeals from: (1) final judgments, orders, and decrees; or (2) with leave of court, from certain interlocutory orders. 28 U.S.C. § 158(a); *Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.)*, 218 B.R. 643, 645 (1st Cir. BAP 1998). A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment," *id.* at 646 (citations omitted), whereas an interlocutory order "only decides some intervening matter pertaining to the cause, and requires further steps to be taken in order to enable the court to adjudicate the cause on the merits." *Id.* (quoting *In re Am. Colonial Broad. Corp.*, 758 F.2d 794, 801 (1st Cir.1985)). Generally, a bankruptcy court's order regarding the dischargeability of a debtor's student loans is a final order. *See Educ. Credit Mgmt. Corp. v. Kelly (In re Kelly)*, 312 B.R. 200, 204 (1st Cir. BAP 2004).

### STANDARD OF REVIEW

The Panel reviews the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo. See TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995); *Western Auto Supply Co. v. Savage Arms, Inc. (In re Savage Indus., Inc.)*, 43 F.3d 714, 719 n. 8 (1st Cir.1994). Generally, a bankruptcy court's undue hardship determination involves the application of a legal standard to the facts of a particular case and therefore poses a mixed question of law and fact. *See TI Fed. Credit Union*, 72 F.3d at 928; *see also Nash v. Conn. Student Loan Found. (In re Nash)*, 446 F.3d 188, 191 (1st Cir. 2006); *Lorenz v. Am. Educ. Servs./Pa. Higher Educ. Assistance Agency (In re Lorenz)*, 337 B.R. 423, 429 (1st Cir. BAP 2006). "Appellate courts review bankruptcy court findings of fact under the clearly

erroneous standard, but subject legal conclusion[s] drawn by such courts to *de novo* review." *TI Fed. Credit Union*, 72 F.3d at 928.

The district court determined that the bankruptcy court's factual findings were not clearly erroneous, and, therefore, no factual issues were determined by the bankruptcy court on remand. Thus, the bankruptcy court's findings may not be challenged in this appeal. *See Ellis v. U.S.*, 313 F.3d 636, 646 (1st Cir.2002) (quoting *Flibotte v. Pa. Truck Lines, Inc.*, 131 F.3d 21, 25 (1st Cir.1997)) (holding that under the law of the case doctrine, a lower court may not relitigate issues that a higher court decided "whether explicitly or by reasonable implication, at an earlier stage of the same case."). Therefore, the standard of appellate review is *de novo* because the issues presented concern matters of law, not of fact. *See Braunstein v. McCabe*, 571 F.3d 108, 124 (1st Cir.2009).

### DISCUSSION

### I.  The Appropriate Legal Standard

### A.  The Burden of Proof

Under § 523(a)(8), debtors are not permitted to discharge educational loans "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The creditor bears the initial burden of establishing that the debt is of the type excepted from discharge under § 523(a)(8). Once the showing is made, the burden shifts to the debtor to prove that excepting the student loan debt from discharge will cause the debtor and her dependents "undue hardship." *Educ. Credit Mgmt. Corp. v. Savage (In re Savage)*, 311 B.R. 835 (1st Cir. BAP 2004); *see also Smith v. Educ. Credit Mgmt. Corp. (In re Smith)*, 328

B.R. 605 (1st Cir. BAP 2005). The debtor bears the ultimate burden of proving undue hardship by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991); *Burkhead v. U.S. (In re Burkhead)*, 304 B.R. 560, 564 (Bankr.D.Mass. 2004).[7]

## B. The Tests for Determining Undue Hardship

■ The Bankruptcy Code does not define "undue hardship" and courts have struggled with its meaning. After several decades of case law interpreting this term, essentially two tests have emerged—the so-called *Brunner* test and the "totality of the circumstances" test. As the First Circuit has noted:

... [N]ine circuit courts of appeal [ ] have followed the Second Circuit's test set forth in *Brunner v. New York State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir.1987) (per curiam). This is a tripartite test, requiring that the debtor show inability, at her current level of income and expenses, to maintain a "minimal" standard of living; the likelihood that this inability will persist for a significant portion of the repayment period; and the existence of good faith efforts to repay the loans. *Id.* at 396. A facially different test is the Eighth Circuit's totality-of-circumstances test, which would have courts consider the debtor's reasonably reliable future financial resources, his reasonably necessary living expenses, and "any other relevant facts." *See Long v. Educ. Credit Mgmt. Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir.2003).

*Nash*, 446 F.3d at 190. Although the First Circuit acknowledged the two approaches in *Nash*, it declined to adopt formally a particular test for determining undue hardship, and it remains an undecided issue in this circuit. *See Nash*, 446 F.3d at 190.

In the First Decision, the bankruptcy court applied the totality of the circumstances test to determine whether excepting the Debtor's student loan obligations from discharge would cause her undue hardship. The district court determined that the issue of the appropriate test was immaterial as the result would be the same under either test. On remand, the bankruptcy court again declined to endorse the *Brunner* test. On appeal, ECMC urges the Panel to formally adopt the so-called *Brunner* test.[8]

## C. Adopting a Test

■ As noted above, neither the plain language of § 523(a)(8) nor the First Circuit mandate a particular test for evaluating the dischargeability of student loans. The Panel has also declined to endorse a particular test.[9] Most of the bankruptcy

---

7. In attempting to prove undue hardship under § 523(a)(8), a debtor:

> ... has a formidable task, for Congress has made the judgment that the general purpose of the Bankruptcy Code to give honest debtors a fresh start does not automatically apply to student loan debtors. Rather, the interest in ensuring the continued viability of the student loan program takes precedence.

*Nash*, 446 F.3d at 191 (citation omitted). Proof of undue hardship is generally found only in "truly exceptional circumstances, such as illness or the existence of an unusually large number of dependents." *T.I. Fed. Credit Union v. DelBonis*, 72 F.3d 921, 927 (1st Cir.1995).

8. ECMC, acknowledging that the First Circuit has not adopted either test for determining undue hardship, stated in its brief: "ECMC respectfully requests that this Court join the Nine Circuits that have formally adopted the *Brunner* test." Appellant's Brief at 5.

9. In several prior cases involving the dischargeability of student loans under § 523(a)(8), the Panel has declined to adopt

courts within the First Circuit have adopted the totality of the circumstances test over the *Brunner* test,[10] although a few courts within this circuit have applied *Brunner* instead.[11]

To determine the appropriate test, we first examine the differences between the *Brunner* and the totality of circumstances approaches. As the Panel noted in *In re Lorenz,* the distinctions between the two tests are modest, with many overlapping considerations: [12]

> The "totality of the circumstances" analysis requires a debtor to prove by a preponderance of evidence that (1) his past, present, and reasonably reliable future financial resources; (2) his and his dependents' reasonably necessary living expenses; and (3) other relevant facts or circumstances unique to the case, prevent him from paying the student loans in question while still maintaining a minimal standard of living, even when aided by a discharge of other prepetition debts. *Kopf,* 245 B.R. at 739; *see also Hicks v. Educ. Credit*

*Mgmt. Corp. (In re Hicks),* 331 B.R. 18, 31 (Bankr.D.Mass.2005) (distilling so-called totality of the circumstances test to "one simple question: *Can the debtor now, and in the foreseeable future, maintain a reasonable, minimal standard of living for the debtor and the debtor's dependents and still afford to make payments on the debtor's student loans?* "). Courts "should consider all relevant evidence—the debtor's income and expenses, the debtor's health, age, education, number of dependents and other personal or family circumstances, the amount of the monthly payment required, the impact of the general discharge under chapter 7 and the debtor's ability to find a higher-paying job, move or cut living expenses." *Hicks,* 331 B.R. at 31; *see also Kelly,* 312 B.R. at 206; *Savage,* 311 B.R. at 840; *Bloch v. Windham Prof'ls (In re Bloch),* 257 B.R. 374, 378 (Bankr.D.Mass.2001); *Kopf,* 245 B.R. at 744.

The *Brunner* test differs, albeit modestly. *See Kopf,* 245 B.R. at 731 (compar-

---

either the *Brunner* or the totality of the circumstances test, finding either that the result would be the same under either test, or that the appealing party had waived the issue of the applicable test. *See, e.g., In re Lorenz,* 337 B.R. at 430; *Joyce v. Mt. Peaks Fin. Servs., Inc. (In re Joyce),* 342 B.R. 385 (1st Cir.2005); *In re Kelly,* 312 B.R. at 206; *In re Savage,* 311 B.R. at 839.

10. *See, e.g., Sanborn v. Educ. Credit Mgmt. Corp. (In re Sanborn),* 431 B.R. 5, 2010 WL 2572717 (Bankr.D.Mass. Jun.23, 2010); *Taratuska v. The Educ. Res. Inst., Inc. (In re Taratuska),* 2010 WL 583952 (Bankr.D.Mass. Feb.12, 2010); *Fahrenz v. Educ. Credit Mgmt. Corp. (In re Fahrenz),* 2008 WL 4330312 (Bankr.D.Mass. Sept.17, 2008); *Brunell v. Citibank (S.D.) N.A. (In re Brunell),* 356 B.R. 567 (Bankr.D.Mass.2006); *Paul v. Suffolk Univ. (In re Paul),* 337 B.R. 730 (Bankr.D.Mass. 2006); *Gharavi v. U.S. Dep't of Educ. (In re Gharavi),* 335 B.R. 492, 497 (Bankr.D.Mass. 2006); *Hicks v. Educ. Credit Mgmt. Corp. (In re Hicks),* 331 B.R. 18, 31–32 (Bankr.D.Mass.

2005); *Bourque v. Educ. Credit Mgmt. Corp. (In re Bourque),* 303 B.R. 548, 550 (Bankr. D.Mass.2003); *Lamanna v. EFS Servs., Inc. (In re Lamanna),* 285 B.R. 347 (Bankr.D.R.I. 2002); *Dolan v. Am. Student Assist. (In re Dolan),* 256 B.R. 230, 238 (Bankr.D.Mass. 2000); *Kopf v. Dep't of Educ. (In re Kopf),* 245 B.R. 731, 741 (Bankr.D.Me.2000); *Phelps v. Sallie Mae Loan Serv. Ctr. (In re Phelps),* 237 B.R. 527 (Bankr.D.R.I.1999).

11. *See Gallagher v. Educ. Credit Mgmt. Corp. (In re Gallagher),* 333 B.R. 169, 173 (Bankr. D.N.H.2005); *Grigas v. Sallie Mae Serv. Corp. (In re Grigas),* 252 B.R. 866 (Bankr.D.N.H. 2000); *Garrett v. N.H. Higher Educ. Assistance Found. (In re Garrett),* 180 B.R. 358 (Bankr.D.N.H.1995).

12. Indeed, the Panel has stated that the only practical difference between the two tests is that under *Brunner,* the debtor must establish that she made a good faith effort to repay the loans. *See In re Kelly,* 312 B.R. at 206.

ing tests). Brunner requires a "three-part showing (1) that the debtor cannot, based on current income and expenses, maintain a 'minimal' standard of living for herself or her dependants if forced to repay the loans; (2) that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debtor has made good faith efforts to repay the loans." *Brunner,* 831 F.2d at 396. . . .

One can see readily that insofar as income and expenses are concerned, the tests take converging tacks. The "totality test" looks to past, present, and future "financial resources" and "necessary living expenses" and whether, taken together with other factors, the debtor has the ability to repay while maintaining a minimal standard of living. *Brunner* asks the same question looking to "current" income and expenses, then considers whether circumstances inhibiting repayment will endure.

*In re Lorenz,* 337 B.R. at 430–31.

Although the two tests do not always diverge in function, they do in form. *In re Hicks,* 331 B.R. at 26. As the *In re Hicks* court noted: "While under the totality of the circumstances approach, the court may also consider 'any additional facts and circumstances unique to the case' that are relevant to the central inquiry (i.e., the debtor's ability to maintain a minimum standard of living while repaying the loans), the *Brunner* test imposes two additional requirements on the debtor that *must* be met if the student loans are to be discharged." *Id.* (emphasis in original). Looking to the bankruptcy court's extensive analysis of the predominant tests in *In re Kopf,* the *In re Hicks* court agreed with *In re Kopf* that the *Brunner* test "test[s] too much." *Id.* at 27.

At first blush, the second *Brunner* requirement—a showing that the debtor's "state of affairs is likely to persist for a significant portion of the repayment period of the student loan"—seems merely to resonate with the forward-looking nature of the undue hardship analysis. That is, under *any* undue hardship standard the debtor must show that the inability to maintain a minimum standard of living while repaying the student loans is not a temporary reality, but will continue into the foreseeable future.

Many courts interpreting and applying the second *Brunner* prong, however, place dispositive weight on the debtor's ability to demonstrate "additional extraordinary circumstances" that establish a "certainty of hopelessness." This has led some courts to require that the debtor show the existence of "unique" or "extraordinary" circumstances, such as the debtor's advanced age, illness or disability, psychiatric problems, lack of usable job skills, large number of dependents or severely limited education. . . . And, in the absence of such a showing, the court may conclude that the debtor has failed the second *Brunner* prong and the student loans will not be discharged. . . .

Requiring the debtor to present additional evidence of "unique" or "extraordinary" circumstances amounting to a "certainty of hopelessness" is not supported by the text of § 523(a)(8). The debtor need only demonstrate "undue hardship." True, the debtor must be able to prove that the claimed hardship is more than present financial difficulty. *See Kopf,* 245 B.R. at 742, 745. And the existence of any of the factors mentioned above may be highly relevant to a finding that the hardship will persist into the foreseeable future. But whether or not this Court subjectively views

the debtor's circumstances as "unique" or "extraordinary" is, in a word, overkill. *In re Hicks,* 331 B.R. at 27–28. We agree with this rationale and conclude that Brunner takes the test too far.

Furthermore, we agree that the "good faith" requirement of *Brunner* is "without textual foundation." *Id.* at 28 (citing *In re Kopf,* 245 B.R. at 741). Ultimately, the debtor must establish by a preponderance of the evidence that her present and future actual circumstances would impose an undue hardship if her debts are excepted from discharge. Irrespective of the test, the decision of a bankruptcy court, whether the failure to discharge a student loan will cause undue hardship to the debtor and the dependents of the debtor under § 523(a)(8), rests on both the economic ability to repay and the existence of any disqualifying action(s). The party opposing the discharge of a student loan has the burden of presenting evidence of any disqualifying factor, such as bad faith. The debtor is not required under the statute to establish prepetition good faith in absence of a challenge. The debtor should not be obligated to prove a negative, that is, that he did not act in bad faith, and, consequently, acted in good faith.

▇▇ Undue hardship is measured as of trial date, *In re Kelly,* 312 B.R. at 204, and is a forward-looking concept. *In re Kopf,*

245 B.R. at 744.[13] Placing emphasis on prepetition failure to pay misconstrues the wording of the undue hardship requirement in the statute. As stated before, distilled to its essence, the finding of undue hardship under § 523(a)(8) following the totality of the circumstances test rests on one basic question: "Can the debtor now, and in the foreseeable near future, maintain a reasonable, minimal standard of living for the debtor and the debtor's dependents and still afford to make payments on the debtor's student loans?" *In re Hicks,* 331 B.R. at 31.[14] Answering said question leads the bankruptcy court to discharge its task of making "a principled determination of the requirement's meaning and a careful review of the debtor's circumstances." *In re Kopf,* 245 B.R. at 741.

Having considered the various tests used to determine undue hardship, the plain text of § 523(a)(8), and further recognizing that the majority of courts in the First Circuit adopt the totality of the circumstances test, the Panel declines to adopt the *Brunner* test as requested by ECMC. The Panel is persuaded that the totality of the circumstances test best effectuates the determination of undue hardship while adhering to the plain text of § 523(a)(8).[15] *See In re Hicks,* 331 B.R. at 32.

---

**13.** *See* Feather D. Baron, *The Nondischargeability of Student Loans in Bankruptcy: How the Prevailing "Undue Hardship" Test Creates Hardship of Its Own,* 442 U.S.F. L.Rev. 265 (Summer 2007), for timing and ripeness issues in § 523(a)(8) actions.

**14.** *See also In re Nash,* 446 F.3d at 192 (stating at the outset that "[u]nder any test assessing eligibility for discharge of student loan debt, appellant must show that her current inability to maintain a minimal standard of living if forced to repay the debt will continue into the future.").

**15.** The First Circuit has endorsed the totality of the circumstances approach in related bankruptcy settings. *See Marrama v. Citizens Bank of Mass. (In re Marrama),* 430 F.3d 474, 482 (1st Cir.2005) (good faith is a fact intensive determination to be made on a case-by-case basis assessing the totality of the circumstances), *aff'd,* 549 U.S. 365, 127 S.Ct. 1105, 166 L.Ed.2d 956 (2007); *Merrimac Paper Co., Inc. v. Harrison (In re Merrimac Paper Co., Inc.),* 420 F.3d 53, 62–63 (1st Cir.2005) (a court sitting in equity must determine the subordination of a claim based on the totality of the circumstances in the particular case); *McMullen v. Sevigny (In re McMullen),* 386

## II. Consideration of the ICRP Under the Totality of the Circumstances Test

[9] ECMC's primary argument on appeal is that the bankruptcy court failed to adequately consider the availability of the ICRP in its determination of undue hardship under the totality of the circumstances. As noted above, the totality of the circumstances test requires the bankruptcy court to consider "any other relevant facts and circumstances" unique to the particular case, such as the debtor's ability to repay her loans. Although courts applying the totality of the circumstances test have treated the ICRP differently, the weight of authority is to treat the ICRP as one of many factors to consider in evaluating the totality of the debtor's circumstances.[16] Thus, a debtor's eligibility to participate in the ICRP may be considered by the court when applying the totality of the circumstances test, but it is not determinative. *See In re Kelly,* 312 B.R. at 206. As set forth below, we conclude that the bankruptcy court properly considered the Debtor's eligibility for the ICRP as part of its examination of the totality of the circumstances.

The Ford Program allows student loans to be consolidated and payments on the consolidated loan to be adjusted based on a formula that takes into account poverty guidelines and a debtor's adjusted gross income. *See* 34 C.F.R. § 685.100, *et seq.* One of the consolidation options under the Ford Program is the ICRP. *See* 34 C.F.R. §§ 685.208–685.209. Under the ICRP, an eligible debtor's annual loan payment is generally equal to 20 percent of the difference between his or her adjusted gross income and the federal poverty guidelines for the debtor's family size, regardless of the amount of unpaid student loan debt. 34 C.F.R. § 685.209. Repayments are made monthly. 34 C.F.R. § 685.208(k). ICRP payments are recalculated annually based on changes to the debtor's reported household adjusted gross income. 34 C.F.R. § 685.209. Unpaid interest is capitalized until the outstanding principal is ten percent greater than the original principal amount. 34 C.F.R. § 685.209(c)(5). If the borrower has not repaid the loan at the end of 25

F.3d 320, 328–29 (1st Cir.2004) (whether a party has acted in bad faith is a quintessential issue of fact to be determined following an examination of the totality of the circumstances); *Smith Barney, Inc. v. Strangie (In re Strangie),* 192 F.3d 192, 196–97 n. 9 (1st Cir.1999) (concluding that in light of the entire record, and endorsing that whether to pierce a corporate veil is a factual issue to be examined under the totality of the circumstances, the bankruptcy court's determination that the corporate form should be respected is not clear error); *First USA v. Lamanna (In re Lamanna),* 153 F.3d 1, 2 (1st Cir.1998) (adopting the totality of the circumstances test as the measure of substantial abuse under § 707(b) of the Bankruptcy Code); *Palmacci v. Umpierrez,* 121 F.3d 781, 793 (1st Cir.1997) (fraudulent intent in a § 523(a)(2)(A) action is normally determined from the totality of the circumstances); *Williamson v. Busconi,* 87 F.3d 602, 603 (1st Cir.1996).

16. *See, e.g., In re Denittis,* 362 B.R. at 64; *see also Educ. Credit Mgmt. Corp. v. Jesperson,* 571 F.3d 775, 782 (8th Cir.2009); *Cheney v. Educ. Credit Mgmt. Corp. (In re Cheney),* 280 B.R. 648 (N.D.Iowa 2002); *Walker v. Sallie Mae Serv. Corp. (In re Walker),* 427 B.R. 471, 486–87 (8th Cir. BAP 2010); *Lee v. Regions Bank Student Loans (In re Lee),* 352 B.R. 91, 95 (8th Cir. BAP 2006); *Vargas v. Educ. Credit Mgmt. Corp. (In re Vargas),* 2010 WL 148632, *4–5, 2010 Bankr.LEXIS 63, *12–13 (Bankr. C.D.Ill. Jan. 12, 2010); *Booth v. U.S. (In re Booth),* 410 B.R. 672, 675–76 (Bankr. E.D.Wash.2009); *Halverson v. U.S. Dep't of Educ. (In re Halverson),* 401 B.R. 378 (Bankr. D.Minn.2009); *Collins v. Educ. Credit Mgmt. Corp. (In re Collins),* 376 B.R. 708, 716 (Bankr.D.Minn.2007); *Wilkinson–Bell v. Educ. Credit Mgmt. Corp. (In re Wilkinson–Bell),* 2007 Bankr.LEXIS 1052, * 16 (Bankr. C.D.Ill. Apr. 7, 2007).

years, the unpaid portion of the loan is cancelled. 34 C.F.R. § 685.209(c)(4)(i).

■ Courts considering the ICRP as a factor under the totality of the circumstances test evaluate both the benefits and drawbacks of the program for the individual debtor within his or her unique circumstances. *Brooks v. Educ. Credit Mgmt. Corp. (In re Brooks)*, 406 B.R. 382, 393 (Bankr.D.Minn.2009). Although these courts acknowledge that the ICRP reduces the immediate debt burden of the student loan debtor, they are often concerned about the longer term debt and tax consequences of the program. They recognize that, although it may be appropriate to consider whether a debtor has pursued her options under the ICRP, participation in that program may not be appropriate for some debtors because of the impact of the negative amortization of the debt over time when payments are not made and the tax implications arising after the debt is cancelled. Because of these considerations, the ICRP may be beneficial for a borrower whose inability to pay is temporary and whose financial situation is expected to improve significantly in the future. *See In re Vargas*, 2010 WL 148632, at *4–5, 2010 Bankr.LEXIS 63, at *12–13. Where no significant improvement is anticipated, however, such programs may be detrimental to the borrower's long-term financial health. *See id.; see also In re Wilkinson–Bell*, 2007 Bankr.LEXIS 1052, at *16.

Central to this analysis is the idea that because forgiveness of any unpaid debt under the ICRP may result in a taxable event, the debtor who participates in the ICRP simply exchanges a nondischargeable student loan debt for a nondischargeable tax debt. Such an exchange of debt provides little or no relief to debtors. *See Thomsen v. Dep't of Educ. (In re Thomsen)*, 234 B.R. 506, 514 (Bankr. D.Mont.1999); *see also In re Booth*, 410

B.R. at 675–76; *Durrani v. Educ. Credit Mgmt. Corp. (In re Durrani)*, 311 B.R. 496, 509 (Bankr.N.D.Ill.2004), *aff'd*, 320 B.R. 357 (N.D.Ill.2005); *but see In re Brunell*, 356 B.R. at 580–81 (holding that "[t]o the extent that the Debtor satisfies the requirements for participation in the Ford program, any tax liability based on the forgiven balance at that time is discharged."). For example, in *In re Booth*, the bankruptcy court stated:

> Application of the ICRP does not result in a discharge of the debt nor relieve the debtor from personal liability on the debt. Further action may, and will, be taken to collect the obligation, even if that action is simply requiring the debtor to provide annual financial information to the Department of Education. The ICRP does not grant a discharge, but lapse of a period as long as 25 years may result in cancellation or forgiveness of the debt. There is no provision in the regulation for "partial" cancellation or forgiveness of the obligation. Unlike a discharge, cancellation or forgiveness of a debt results in a tax liability. As interest accrues during the 25 years or lesser repayment period, the amount of debt cancelled will be quite large. The resulting tax liability would not be subject to discharge in a later bankruptcy proceeding.

> The focus of the ICRP is on deferral, not discharge, of debt. This is the antithesis of a fresh start. Congress has provided bankruptcy debtors relief which is not provided in the ICRP regulations. Compliance with ICRP regulations will not result in the same relief which can be granted by the courts under 11 U.S.C. § 523(a)(8).

410 B.R. at 675–76. In addition, many of these courts are concerned that the ICRP allows the Department of Education to substitute its administrative determination

regarding undue hardship for the bankruptcy judge's statutorily mandated discretion under § 523(a)(8). *See id.; see also In re Durrani*, 311 B.R. at 509.

■ ECMC presented undisputed evidence that its loans to the Debtor were eligible for the ICRP. Based on the Debtor's adjusted gross income at the time of trial, the bankruptcy court found that her monthly ICRP payments would be $0.00. In its decision after remand, the bankruptcy court acknowledged that the Debtor was aware of the ICRP and her eligibility to participate, but stated that the fact that the Debtor would not be required to repay her student loan under the ICRP did not mandate a finding that her failure to participate in the program prevented a discharge of the debt.[17] Acknowledging both the potential for significant tax liabilities under the ICRP and its concern that finding failure to participate in a zero payment ICRP is per se lack of good faith would be an abdication of the bankruptcy court's responsibility to determine dischargeability of student loans, it ultimately concluded that:

> . . . shackling the Debtor to the ICRP would be . . . a pointless exercise. Although her current payments under the ICRP would be zero, interest would continue to accrue despite the fact that the Debtor's chances of ever repaying any portion of the loan are virtually nonexistent. The Debtor is now 65 years old, has failed to pass the Massachusetts bar examination three times. She testified she has no plans to retake the exam, which is reasonable in light of her testimony that she lacks the funds to do so, has not come within "striking distance"

of passing, and importantly had an adverse physical reaction during the third examination whereby she almost fainted. Moreover, as set forth in this Court's Memorandum of Decision, the Debtor has attempted unsuccessfully to find employment as a secretary and has sought to publish a novel. These efforts demonstrate her good faith despite her reluctance to be forced into the Ford Program. Nor are circumstances likely to improve for the Debtor. But for the ability to live in the den of her father's home, the Debtor, without some sort of financial aid, could easily become homeless. In view of her age and work history, her prospects for a better financial future are dim. To subject her to a meaningless repayment plan when she clearly does not have the ability to repay these student loans now or in the foreseeable future is not required by 11 U.S.C. § 523(a)(8) and is inconsistent with this Court's role as the adjudicator of undue hardship.

2010 WL 147798, at *1–2, 2010 Bankr.LEXIS 71, at *5–6.

ECMC argues that the bankruptcy court failed to comply with the district court's directives for remand. We disagree. Significantly, the district court did not adopt a per se rule that the availability of a zero payment ICRP should automatically result in a finding of nondischargeability. In its decision, the district court held that "[t]he decision whether to discharge [a student loan] in a case where the debtor is eligible but declines to participate in the ICRP must be the result of an individualized analysis in which the ICRP

---

**17.** There are courts that, despite following the *Brunner* test, have held that forgoing enrollment in the ICRP is a factor to consider in determining whether a debt is excepted from discharge under § 523(a)(8), but that the failure to participate is not per se indicative of

bad faith and is not outcome determinative. *See, e.g., Barrett v. Educ. Credit Mgmt. Corp.,* 487 F.3d 353 (6th Cir.2007); *Educ. Credit Mgmt. Corp. v. Mosley,* 494 F.3d 1320 (11th Cir.2007).

is given weight but for which no particular outcome is prescribed." 421 B.R. at 37. Thus, although the district court held that the bankruptcy court is obligated to consider the Debtor's eligibility for participation in the ICRP, it also acknowledged that eligibility alone did not mandate a particular outcome in the undue hardship analysis. *Id.* The district court concluded, therefore, that the ICRP must be considered as a factor in the undue hardship analysis and remanded the case to the bankruptcy court for proceedings to do so. *Id.*

▆▆ On remand, the bankruptcy court clearly stated that, despite the Debtor's eligibility for the Ford Program, her ability to repay the debt was unrealistic in light of her age, inability to pass the Massachusetts bar examination, difficulty finding employment, and other burdens. These circumstances are amply supported by the record and are appropriate factors to be considered under the totality of the circumstances test. Thus, we conclude that the bankruptcy court adequately considered the Debtor's decision to forego enrollment in the ICRP as a factor within the totality of the circumstances.

## III. The Debtor's Work Experience and Age

ECMC argues that the bankruptcy court erred in its legal conclusions regarding the Debtor's work experience and her age. Although ECMC purports to challenge the bankruptcy court's legal conclusions regarding these issues, it essentially restates the arguments it made in the district court regarding the bankruptcy court's factual findings. The district court concluded that the bankruptcy court's factual findings were not clearly erroneous

and, therefore, there were no factual issues before the bankruptcy court on remand nor before the Panel in this appeal. *See Ellis v. U.S.,* 313 F.3d at 646.[18]

### CONCLUSION

As set forth above, the Panel concludes that the bankruptcy court did not err in its legal conclusions after remand regarding the weight that the Debtor's eligibility to participate in the ICRP should have in the undue hardship analysis, as well as its conclusion that the totality of the circumstances warranted a finding of undue hardship. Therefore, we **AFFIRM.**

HAINES, Chief Judge, concurring.

I agree with the majority's conclusion that the judgment of the bankruptcy court should be affirmed; I write separately for several reasons.

The majority concludes that the "totality of the circumstances" test is the proper measure of "undue hardship" for determining the dischargeability of student loan obligations under § 523(a)(8). It goes on to assay the correctness of the bankruptcy court's determination exclusively under the totality of the circumstances model. The determination of the test to be applied to determine dischargeability is, pure and simple, a question of law, reviewed *de novo. Abboud v. The Ground Round, Inc. (In re The Ground Round, Inc.),* 482 F.3d 15, 17 (1st Cir.2007). We review the bankruptcy court's conclusion of undue hardship as the determination of a mixed question of law and fact. *Lorenz v. Am. Educ. Services/Pa. Higher Educ. Assistance Agency (In re Lorenz),* 337 B.R. 423, 429 (1st Cir. BAP 2006) On the "sliding scale" that applies to review of such questions, a

---

**18.** We agree with the district court's conclusion that "[t]he record shows a pattern of gradually decreasing employability followed by prolonged unemployment, despite a broad and vigorous job search and increasing education and work experience." 421 B.R. at 33.

determination of undue hardship falls toward the legal/policy end of the spectrum, calling for *de novo* review, as well. *Id.*

I have no quarrel with the majority's conclusion that the debtor demonstrated undue hardship and, therefore, that her student loans should be discharged. This case, however, does not call for choosing between the totality of the circumstances test and the *"Brunner"* test,[19] as employing either test would result in affirmance. The majority's rejection of the *Brunner* test is unnecessary to resolution of this appeal and, therefore, unwarranted. I am no fan of *Brunner.*[20] The majority's criticisms of it are well-taken. I am disinclined to enshrine the majority's legal determination as a holding when it is of no consequence to this case.

Having lost below under the trial court's careful consideration of the totality of the circumstances touching on the debtor's case, the appellant begs us to "adopt" *Brunner.* But we need not respond (either "yes" or, as here, "no") when the answer is of no moment.

Having withstood one appellate assault, the bankruptcy court's factual findings are fixed. They include:

● "[G]iven the Debtor's lack of recent work history, narrow work experience, failure to pass the bar exam, age, unsuccessful attempts to find employment in a variety of fields, and unsuccessful attempts to sell a novel and acquire a patent, the Debtor had no reasonably reliable financial re-

sources other than [ ... ] Social Security payments."[21]

● "[I]f the Debtor participated in the Ford Program, her current financial status would result in her owing no monthly payments for her student loans."[22]

● "But for the ability to live in the den of her father's home, the Debtor, without some sort of financial aid, could easily become homeless. In view of her age and work history, her prospects for a better financial future are dim."[23]

Taken together, these findings provide no basis to conclude that this debtor will *ever* have the financial resources to payoff (or even pay down) her student loan, on *any* terms.

One must ask, then, how could the failure to enroll in a program that would—as far as the judicial eye can see—require the debtor to pay *nothing,* be either a circumstance cutting against discharging the loan under the "totality" test or a lack of "good faith efforts" to pay under *Brunner?* Under either test, the court below was being asked to deny discharge of the loans on what basis? It could only be on the possibility that the debtor might win the lottery or that some equally improbable instance of financial good fortune could strike. Need it be said that, if such were a sufficient basis to deny discharge of a student loan, the prospect of ever discharging a student loan pursuant to § 523(a)(8) would become fantasy?

**19.** *Brunner v. New York State Higher Educ. Servs. Corp.* 831 F.2d 395 (2d Cir.1987) (hereafter *"Brunner"*).

**20.** *See In re Lorenz,* 337 B.R. at 432; *Kopf v. Dep't of Educ. (In re Kopf),* 245 B.R. 731, 741 (Bankr.D.Me.2000).

**21.** Supra at 4.

**22.** Supra at 4.

**23.** *Bronsdon v. Educ. Credit Mgmt. Corp.(In re Bronsdon),* 2010 WL 147798, at *2, 2010 Bankr.LEXIS 71, at *6 (Bankr.D. Mass. Jan 8, 2010); *Educ. Credit Mgmt. Corp v. Bronsdon (In re Bronsdon),* 421 B.R. 27, 33 (D.Mass. 2009) (affirming the bankruptcy court's finding that Bronsdon would not be able to obtain employment in the future).

Furthermore, taking this case as the one that requires a choice between the totality of the circumstances test and *Brunner* credits a perverse application of the *Brunner* model. The *Brunner* court was concerned about debtors who resorted to bankruptcy and sought to discharge student loans without first making a good faith attempt at repayment.[24] Flipping the test's historical "good faith effort to repay" prong into the future is a misapplication.[25] And in cases like this one, courts would no longer inquire whether a debtor could repay a student loan without undue hardship (as the statute asks). Instead, they would be required to consider whether: (1) when there exists no reasonable possibility of payment; and (2) there exists a program that would require no payment, discharge of student loans must be denied because the debtor cannot satisfy *Brunner's* "good faith" prong ... because the debtor has not enrolled in the program?

Given that the choice of test makes no difference in this case, and that to make the unnecessary choice here can only contribute to the confusion surrounding undue hardship analysis, I am left to concur in the majority's conclusion without joining it on the path it has taken to reach it.

---

**24.** *Brunner,* 831 F.2d at 397; *see Cazenovia College v. Renshaw (In re Renshaw),* 222 F.3d 82, 87 (2d Cir.2000) ("Congress enacted § 523(a)(8) because there was evidence of an increasing abuse of the bankruptcy process that threatened the viability of educational loan programs and harm to future students as well as taxpayers"); *United Student Aid Funds v. Pena (In re Pena),* 155 F.3d 1108, 1111 (9th Cir.1998) ("Section 523(a)(8) was a response to 'a rising incidence of consumer bankruptcies of former students motivated primarily to avoid payment of education loan debts'"); *Andrews Univ. v. Merchant (In re Merchant),* 958 F.2d 738, 740 (6th Cir.1992) ("The legislative history of the 11 U.S.C. § 523(a)(8) teaches us that the exclusion of education loans from the discharge provisions was designed to remedy an abuse by students, who immediately upon graduation, filed petition for bankruptcy and obtained a discharge of their educational loans.").

**25.** *See, e.g., In re Kopf,* 245 B.R. 731; *Educ. Credit Mgmt. Corp. v. Polleys,* 356 F.3d 1302, 1310 (10th Cir.2004) ("Courts should base their estimation of a debtor's prospects on specific articulable facts, not unfounded optimism."); *Wilson v. Educ. Credit Mgmt. Corp. (In re Wilson),* 2002 WL 32155401, *4 (Bankr. E.D.Va. Jun.25, 2002) ("Good faith effort also requires 'the debtor to have made payments when he or she was in a position to make such payments.'") (quoting *Lohr v. Sallie Mae (In re Lohr),* 252 B.R. 84, 89 (Bankr.E.D.Va. 2000)); *Maulin v. Salliemae (In re Maulin),* 190 B.R. 153, 156 (Bankr.W.D.N.Y.1995) ("[T]he demonstration of good faith does not necessarily command a history of payment. It does require a history of effort to achieve repayment ... Relevant proof may ... include a history of some payment, the propitious use of deferments and the energetic exploration of employment options.").