Robert E. MURPHY

v.

**EDUCATIONAL CREDIT
MANAGEMENT CORPORATION.**

Civil Action No. 13–11408–RWZ.

United States District Court,
D. Massachusetts.

Signed May 21, 2014.

Robert E. Murphy, Duxbury, MA, pro se.

John F. White, Jr., Lipman & White, Hanover, MA, Adam Trampe, Educational Credit Management Corporation, Oakdale, MN, for Educational Credit Managment Corporation.

## MEMORANDUM OF DECISION

ZOBEL, District Judge.

Robert E. Murphy appeals from the bankruptcy court's judgment that his student loan debt is nondischargeable under 11 U.S.C. § 523(a)(8)(A)(i). The judgment is AFFIRMED.

### I. Background

The basic facts are undisputed. Murphy is 63 years old. He is married and lives in good health in Duxbury, Massachusetts. He has been unemployed since 2002. He last worked as president of a corporation, but in 2002, the corporation was sold, its operations were moved overseas, and Murphy's employment was terminated. He has looked for work, without success, since then. He attributes his prolonged unemployment to the shrinking American manufacturing base, his age, his overqualification for some non-executive positions, and the stigma of prolonged unemployment itself.

Murphy financed—at least in part—the college education of his three now-grown children. He took out twelve loans between 2001 and 2007 in the total amount of $220,765. The loans have since been consolidated and are all held by defendant Educational Credit Management Corporation ("ECMC"). The current balance is approximately $242,697.90. Murphy's children are not responsible for repaying the loans.

Murphy filed an adversary proceeding in the bankruptcy court seeking a discharge

of this debt. The bankruptcy court held a trial, at the end of which it concluded that although Murphy testified credibly that he had tried to find a job and made an effort to repay the loans, the law did not support a discharge because (1) Murphy is well educated and has held high-earning jobs in the past; (2) he is near, but not yet at, the retirement age; and (3) with his children grown, he is unburdened from other debt. The court denied a discharge. This timely appeal followed.

## II. Legal Standard

 A debtor may not discharge an educational loan "unless excepting such debt from discharge ... would impose an undue hardship on the debtor and the debtor's dependents." 11 U.S.C. § 523(a)(8). The debtor must prove undue hardship by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). The Bankruptcy Code does not define "undue hardship," and courts apply one of two tests to determine what constitutes one: the "totality of the circumstances" test or the *Brunner* test. *See Brunner v. N.Y. State Higher Educ. Servs. Corp.*, 831 F.2d 395 (2d Cir. 1987) (per curiam). The differences between the two tests are "modest," *Bronsdon v. Educ. Credit Mgmt. Corp. (In re Bronsdon)*, 435 B.R. 791, 798 (1st Cir. BAP 2010), and I do not explore them here.

 The bankruptcy court applied the "totality of the circumstances" test, and so do I.[1] Debtor must show:

(1) his past, present, and reasonably reliable future financial resources;

(2) his and his dependents' reasonably necessary living expenses; and

(3) other relevant facts or circumstances unique to the case, prevent him from paying the student loans in question while still maintaining a minimal standard of living, even when aided by a discharge of other pre-petition debts.

*Lorenz v. Am. Educ. Servs./Pa. Higher Educ. Assistance Agency (In re Lorenz)*, 337 B.R. 423, 430 (1st Cir. BAP 2006). I should consider all relevant evidence— the debtor's income and expenses, the debtor's health, age, education, number of dependents and other personal or family circumstances, the amount of the monthly payment required, the impact of the general discharge under chapter 7 and the debtor's ability to find a higher-paying job, move or cut living expenses. *Id.* (quoting *Hicks v. Educ. Credit Mgmt. Corp. (In re Hicks)*, 331 B.R. 18, 31 (Bankr.D.Mass.2005)). The test boils down to one question: "Can the debtor now, and in the foreseeable future, maintain a reasonable, minimal standard of living for the debtor and the debtor's dependents and still afford to make payments on the debtor's student loans?" *In re Hicks*, 331 B.R. at 31.

 This inquiry poses a mixed question of fact and law. *In re Bronsdon*, 435 B.R. at 796. I review the bankruptcy court's findings of fact for clear error and its legal conclusion—here, whether Mur-

---

1. The test has flaws, its pliancy among them. *See Educ. Credit Mgmt. Corp. v. Polleys*, 356 F.3d 1302, 1309 (10th Cir.2004) (" 'Legal rules have value only to the extent they guide primary conduct or the exercise of judicial discretion. Laundry lists, which may show ingenuity in imagining what could be relevant but do not assign weights or consequences to the factors, flunk the test of utility.' " (quoting

In re *Plunkett*, 82 F.3d 738, 741 (7th Cir. 1996))). *But see Nash v. Conn. Student Loan Found.*, 330 B.R. 323, 326 (D.Mass.2005) ("A 'totality-of-the-circumstances test' is ... simply an adjuration to the decisionmaker to make an honest and intelligent judgment.... That is the default standard for judging."), *aff'd* 446 F.3d 188 (1st Cir.2006).

phy proved an undue hardship—de novo. *TI Fed. Credit Union v. DelBonis*, 72 F.3d 921, 928 (1st Cir.1995). Clear error review means that I may not disturb the bankruptcy court's findings of fact if they are "supportable on any reasonable view of the record." *Gannett v. Carp (In re Carp)*, 340 F.3d 15, 22 (1st Cir.2003).

## III. Analysis

█ Murphy has a steep hill to climb, not only because of the standard of review, but because of the legal substance. Congress intended that "the general purpose of the Bankruptcy Code to give honest debtors a fresh start does not automatically apply to student loan debtors." *Nash v. Conn. Student Loan Found.*, 446 F.3d 188, 191 (1st Cir.2006). Section 523(a)(8) prioritizes the continued financial integrity of the federal student loan programs over the debtor's ability to make a fresh start. *Id.* (citing *DelBonis*, 72 F.3d at 937). For this reason, discharges for undue burden are granted in only "truly exceptional circumstances." *DelBonis*, 72 F.3d at 927.

At the outset, I clarify two issues. First, the parties disagree about the breadth and depth of Murphy's job search. Murphy states that he has "earnestly" looked for work "at all levels from positions of president to accountant," and has also applied, unsuccessfully, for a job as a chauffeur. Appellant's Br. at 31. He further notes that the bankruptcy court found his trial testimony "completely credible."

*Id.* ECMC counters that Murphy has focused too narrowly on executive level positions and therefore has not endeavored to maximize his income. Appellee's Br. at 7 (quoting *O'Hearn v. Educ. Credit Mgmt. Corp. (In re O'Hearn)*, 339 F.3d 559, 566 (7th Cir.2003) ("[I]t is not uncommon for individuals to take jobs not to their liking in order to pay off their student loans . . . .")). In its memorandum, the bankruptcy court stated that Murphy "has looked far and wide for employment, using several employment agents and services." [2] Appellant's Addendum ("Add.") at 55. Four sentences later, after outlining Murphy's explanation for his unemployment, the court states that it found Murphy's testimony "completely credible." *Id.* It is not altogether clear what the bankruptcy court found credible—only Murphy's explanation of his unemployment or his broader testimony, including the diligence of his employment search—but I assume the court concluded Murphy thoroughly sought employment. Based on the record, this finding is not clearly erroneous.

Second, the parties dispute the import of Murphy's failure to participate in the William D. Ford Direct Loan Program's income contingent repayment plan ("ICRP") and thereby reduce or eliminate his monthly payments. [3] *See* 34 C.F.R. § 685.209. Murphy contends it would be a "pointless exercise" to "shackle" him to the ICRP because interest would continue to accrue. [4] Appellant's Br. at 39. ECMC

---

**2.** I do note that Murphy stated at trial that, aside from the chauffeur position, he has been "strictly looking at full-time employment." Trial Tr. at 56.

**3.** Generally, an ICRP participant's annual loan payment is the lesser of "(A) [t]he amount the borrower would repay annually over 12 years using standard amortization multiplied by an income percentage factor that corresponds to the borrower's [adjusted gross income] . . . [and] (B) 20 percent of

discretionary income." 34 C.F.R. § 685.209(b)(1)(ii)(A)–(B). After the 25–year repayment period, the Secretary of Education cancels any outstanding debt. 34 C.F.R. § 685.209(b)(3)(D).

**4.** As support, he cites an amortization table of student loans showing that, assuming he had an adjusted gross income of $50,000 for the next 15 years, the balance of the loan would total approximately $506,000 in 2037. Appellant's Add. at 116.

responds that Murphy's failure to participate forgoes a chance to improve his standard of living. Appellee's Br. at 6. The bankruptcy court found it "significant" that Murphy had not explored the ICRP, Appellant's Add. at 55, but stated in its order denying Murphy's motion for reconsideration that it "would have ruled as it did even if [Murphy] had already explored the government's repayment programs to no avail." *Id.* at 71.

The ICRP is one of many "circumstances" courts must consider, but it is not dispositive as to undue hardship. *Ayele v. Educ. Credit Mgmt. Corp.*, 468 B.R. 24, 32 (Bankr.D.Mass.2012). Sometimes, participating in an ICRP will leave a debtor worse off, because

> [u]nlike a discharge, cancellation or forgiveness of a debt results in a tax liability. As interest accrues during the 25 years or lesser repayment period, the amount of debt cancelled will be quite large. The resulting tax liability would not be subject to discharge in a later bankruptcy proceeding.
> The focus of the ICRP is on deferral, not discharge, of debt. This is the antithesis of a fresh start.

*In re Bronsdon*, 435 B.R. at 802 (quoting *In re Booth*, 410 B.R. 672, 676 (Bankr. E.D.Wash.2009)). An ICRP may be especially detrimental where one expects no significant long-term improvement in a debtor's financial situation. *Id.; see Denittis v. Educ. Credit Mgmt. Corp.*, 362 B.R. 57, 64–65 (Bankr.D.Mass.2007). Given the relative unlikelihood of long-term improvement in Murphy's case, and the bankruptcy court's view that it was not dispositive, I do not place great emphasis on Murphy's failure to explore the ICRP.

Turning to the other factors, there is no doubt that Murphy presently cannot pay back a significant part of the loan. His Bankruptcy Schedule J showed that Murphy and his wife operate at a monthly net loss of $3,854. Appellant's Add. at 93. In 2010 and 2011, Murphy and his wife earned $13,220 and $13,224, respectively, consisting solely of his wife's wages as a teacher's aide. *Id.* 95–98. His house is under water. *Id.* at 88 (showing a home valued at $500,000 with a secured claim of $709,677). He testified at trial that foreclosure proceedings are underway. Trial Transcript ("Tr.") at 22. In November 2002, he had an Individual Retirement Account valued at approximately $250,000, Appellant's Add. at 92, but he liquidated it to cover expenses. Tr. at 40.

It is clear Murphy is in financial straits, but I agree with the bankruptcy court that his prolonged unemployment does not support a discharge. Although Murphy's "present income is insufficient to permit [him] to pay [the] student loans and still maintain a minimal standard of living, [he] has not established that [his] prospects for increasing [his] future income are so bleak as to warrant a discharge of the student loans." *Burkhead v. United States (In re Burkhead)*, 304 B.R. 560, 566 (Bankr. D.Mass.2004). True enough, Murphy is unlikely to make significant progress on the loans in the short run. But Murphy has a master's degree and has held high-earning jobs in the past. Tr. at 15, 53–54. He is in his early sixties and is in good health. *Id.* at 14, 24. He is financially unburdened by his now-grown children. *Id.* at 12 (confirming that his children are "self-supporting"). In short, he has a significant period of time remaining during which he can work, and the door on his ability to use that time successfully has by no means closed. Murphy's situation is trying, but it does not present "truly exceptional circumstances." *DelBonis*, 72 F.3d at 927.

As the *Brunner* court explained, a student loan borrower strikes a bargain with

the government. *Brunner v. N.Y. St. Higher Educ. Servs. Corp.*, 46 B.R. 752, 756 (S.D.N.Y.1985), *aff'd* 831 F.2d 395 (2d Cir.1987) (per curiam). All bargains contain risks, and it is for each borrower to determine "whether the risks of future hardship outweigh the potential benefits of a deferred-payment education." *Id.* Murphy was unemployed at the time he took out the majority of the loans. Appellant's Add. at 101. His bargain was especially risky. I do not doubt his good intentions, both then and now, but the fact that this risk has become a reality does not make his hardship "undue."

## IV. Conclusion

The judgment of the bankruptcy court is AFFIRMED.[5]

---

**5.** Murphy represented himself pro se at trial. The bankruptcy judge praised his pro se representation as "the best [he'd] seen." Tr. at 64. I also commend Murphy on his fine briefing in this matter.