**NOT FOR PUBLICATION**

FILED

DEC 02 2016

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

# UNITED STATES BANKRUPTCY APPELLATE PANEL

## OF THE NINTH CIRCUIT

| | |
|---|---|
| In re: | BAP No.   CC-15-1316-FDKi |
| BENJAMIN LEE TAYLOR and JANET LOUISE TAYLOR, | Bk. No.   2:13-bk-35470-BR |
| Debtors. | Adv. Pro. 2:14-ap-01163-BR |
| BENJAMIN LEE TAYLOR, | |
| Appellant, | |
| v. | **MEMORANDUM**[*] |
| KAREN GOOD, DBA Judgment Enforcement Bureau, | |
| Appellee. | |

Argued and Submitted on November 17, 2016
at Pasadena, California

Filed – December 2, 2016

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Barry Russell, Bankruptcy Judge, Presiding

Appearances:     Dennis Winters of Winters Law Firm argued for Appellant Benjamin Lee Taylor; Michael A. Wallin of Slater Hersey and Lieberman LLP argued for Appellee Karen Good.

---

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have, see Fed. R. App. P. 32.1, it has no precedential value, see 9th Cir. BAP Rule 8024-1.

Before: FARIS, DUNN,[**] and KIRSCHER, Bankruptcy Judges.

## INTRODUCTION

Appellant and chapter 7[1] debtor Benjamin Lee Taylor appeals from the bankruptcy court's denial of discharge under §§ 727(a)(2)(A), (2)(B), and (4)(A). He argues that the court erred because the property that he allegedly concealed was not his property or estate property, and the omissions and misstatements relating to the property were not material. We find no merit to Mr. Taylor's arguments. Accordingly, we AFFIRM.

## FACTUAL BACKGROUND

Mr. Taylor is the sole shareholder of a number of businesses registered in the state of California: Taylor Concrete Pumping Corporation ("TCP"), Taylor Transportation, Inc. ("TTI"), Ben Taylor Concrete Co., Taylor Concrete Services, Inc., and Taylor Concrete & Pumping (collectively, "Taylor Entities").

Mr. Taylor maintained that TCP is a defunct corporation with no assets that stopped doing business in 2013. He later testified that, as of January 2014, none of the Taylor Entities was doing business.

Ms. Good is the assignee of two 2010 state court judgments in excess of $430,000 against Mr. Taylor and TCP. She initiated collection actions in California state court, including

---

[**] The Honorable Randall L. Dunn, United States Bankruptcy Judge for the District of Oregon, sitting by designation.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, all "Rule" references are to the Federal Rules of Bankruptcy Procedure, and all "Civil Rule" references are to the Federal Rules of Civil Procedure.

conducting judgment debtor examinations. During one of these examinations, she inquired about TTI. Mr. Taylor testified that he had never heard of TTI and did not own it. He also denied owning any other active business besides TCP.

Mr. Taylor claimed that the recession severely damaged his business between 2007 and 2009 and that he could not pay creditors, including Ms. Good. He and his wife, Janet Louise Taylor, filed their chapter 7 petition on October 18, 2013. They represented that they only had $138 in cash on hand and $1 in a checking account. In their bankruptcy schedules, they disclosed their ownership of TCP, but did not include any other information concerning the Taylor Entities.

At a § 341(a) meeting of creditors on December 5, 2013, Mr. Taylor testified that he did not have a personal bank account and that he paid his bills by money order. He was also asked whether TTI had a Bank of America bank account. Mr. Taylor testified that TTI was dissolved and that it did not have a Bank of America bank account.

Ms. Good then served a subpoena on Bank of America for documents relating to accounts held in the name of TTI or TCP. Bank of America responded by disclosing information pertaining to an account held by TTI (the "TTI Account"), of which Mr. Taylor is an authorized signer. The account statements provided by Bank of America showed thousands of dollars deposited and withdrawn from the TTI Account each month.[2]

---

[2] For example, in the statement for October 2013 (the month in which the Taylors filed for bankruptcy), the ending balance
(continued...)

3

On January 2, 2014, Mr. Taylor testified at a judgment debtor examination in the California superior court that he used the TTI Account to pay his personal bills. He also acknowledged that he owned TTI and was its chief executive officer.

Mr. Taylor also changed his prior testimony and stated at a Rule 2004 examination that the TTI Account belonged to TTI, but he used it as an account for TCP because creditors had liens on TCP's bank accounts. He also deposited into the TTI Account checks made to him personally and made withdrawals for both business and personal expenses.

In March 2014, Ms. Good filed an adversary proceeding against Mr. Taylor to determine nondischargeability of debt under §§ 523(a)(4), (2)(A), and (6) and to deny discharge under §§ 727(a)(2)(A), (2)(B), (3), (4)(A), and (5).[3] In relevant part, Ms. Good asserted that the Taylors were doing business and collecting money under the name of TTI. They opened the TTI Account, which was not reported on their petition or schedules, and used the TTI Account as a depository for checks written to TCP, TTI, Taylor Concrete & Pumping, and Mr. Taylor. She estimated that the checks deposited in the name of TCP exceeded $203,000 in 2012-13. She said that the Taylors withdrew funds

[2](...continued)
was a paltry $364.24. However, the beginning balance was $4,028.75, with deposits totaling $15,659.53 and withdrawals totaling $19,308.04. Withdrawals included payments to Kohl's Department Stores, DirecTV, Netflix, and Experian credit reporting.

[3] The bankruptcy court later granted the Taylors' motion to dismiss the entire complaint as to Mrs. Taylor and the §§ 523(a)(4) and (2)(A) claims as to Mr. Taylor.

4

from the TTI Account to pay both personal and business expenses.

At the trial of Ms. Good's adversary proceeding, Mr. Taylor testified that, because of tax levies and liens attached to his personal bank account and TCP's bank account, "I had no choice but to use the only account I had to deposit checks I received from my concrete work, the account in [TTI]. I did not do this to hide the money from Ms. Good. I did it because it was the only account I had access to."

He additionally claimed that he did not make any false statement at the § 341(a) meeting of creditors because he was confused by Ms. Good's questions regarding TTI and the TTI Account.

At the conclusion of trial, the bankruptcy court said that the concealment and false statements regarding the TTI Account were sufficient to deny discharge under §§ 727(a)(2) and (a)(4), and therefore it did not need to rule on the § 523 claims or the remaining § 727 claims.

On September 1, 2015, the bankruptcy court issued the following findings of fact:

> 3. In connection with his bankruptcy case, defendant intentionally and fraudulently concealed from his schedules and made misstatements regarding a bank account held by Taylor Transportation, Inc. ("TTI") at Bank of America.

> 4. Defendant, with the intent to hinder, delay, and defraud his creditors, used the above bank account held at Bank of America as a depository for checks and monies received by Taylor Concrete Pumping Corp., TTI, and defendant. Defendant also used the funds from this bank account for his personal expenses while having concealed its existence from his creditors by failing to disclose it in his bankruptcy petition.

Mr. Taylor timely filed his notice of appeal on

5

September 15, 2015. Subsequently, the bankruptcy court entered an amended judgment on April 29, 2016 that included a Civil Rule 54(b) certification.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Whether the bankruptcy court erred in denying Mr. Taylor a discharge pursuant to §§ 727(a)(2)(A), (2)(B), and (4)(A).

## STANDARDS OF REVIEW

In an action for denial of discharge, we review: (1) the bankruptcy court's determinations of the historical facts for clear error; (2) its selection of the applicable legal rules under § 727 de novo; and (3) its determinations of mixed questions of law and fact de novo. Searles v. Riley (In re Searles), 317 B.R. 368, 373 (9th Cir. BAP 2004), aff'd, 212 F. App'x 589 (9th Cir. 2006).

De novo review is independent and gives no deference to the trial court's conclusion. Roth v. Educ. Credit Mgmt. Agency (In re Roth), 490 B.R. 908, 915 (9th Cir. BAP 2013).

A bankruptcy court clearly errs if its findings were illogical, implausible, or "without support in inferences that may be drawn from the facts in the record." United States v. Hinkson, 585 F.3d 1247, 1262–63 & n.21 (9th Cir. 2009) (en banc). Review for clear error is "significantly deferential," and an appellate court should not reverse unless it is left with "a definite and firm conviction that a mistake has been committed."

6

In re Roth, 490 B.R. at 915 (quoting Baker v. Mereshian (In re Mereshian), 200 B.R. 342, 345 (9th Cir. BAP 1996)).

**DISCUSSION**

**A.  The bankruptcy court properly denied discharge pursuant to § 727(a)(2).**

Section 727(a)(2) provides that the bankruptcy court may deny a discharge if:

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed –
>
> > (A) property of the debtor, within one year before the date of the filing of the petition; or
> >
> > (B) property of the estate, after the date of the filing of the petition[.]

§ 727(a)(2).

"A party seeking denial of discharge under § 727(a)(2) must prove two things: '(1) a disposition of property, such as transfer or concealment, and (2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act [of] disposing of the property.'" Retz v. Samson (In re Retz), 606 F.3d 1189, 1200 (9th Cir. 2010) (quoting Hughes v. Lawson (In re Lawson), 122 F.3d 1237, 1240 (9th Cir. 1997)).

**1.  The bankruptcy court did not err in finding that Mr. Taylor transferred or concealed his property by depositing his money in the TTI Account.**

Mr. Taylor's main argument is that the court erred in finding that he concealed or lied about property of the estate, because the TTI Account was not in his name, but rather belonged to one of his companies, TTI.

7

"Most courts conclude that 'property of the debtor' under section 727 does not include property of a corporation the debtor controls, unless the court should pierce the corporate veil and disregard the corporate form." Kane v. Chu (In re Chu), 511 B.R. 681, 685 (Bankr. D. Haw. 2014) (citations omitted). The TTI Account, in and of itself, is not property of the debtor or the bankruptcy estate.

But the salient question is not whether the TTI Account itself is in Mr. Taylor's name, but whether the money flowing in and out of the TTI Account was Mr. Taylor's property and therefore rightfully a part of his bankruptcy estate. Ms. Good proved at trial that Mr. Taylor used the undisclosed TTI Account as his personal bank account. Mr. Taylor confirmed that he used the TTI Account to deposit checks written to him personally and made withdrawals for personal expenses. Mr. Taylor does not dispute on appeal that the TTI Account contained his personal funds and that he did not disclose the funds or the TTI Account.

Accordingly, the property at issue - a portion of the money that passed through the TTI Account - belonged to Mr. Taylor. We find no error with the court's conclusion that Mr. Taylor was using the TTI Account to conceal and transfer his personal funds.[4]

---

[4] None of the parties raise the issue of the timing of the transfer and concealment in satisfaction of the separate sub-parts of §§ 727(a)(2). Nevertheless, the record is clear that Mr. Taylor concealed his property both in the year prior to filing his chapter 7 petition (by not disclosing the TTI Account so as to avoid creditors' liens) and after the bankruptcy filing (by not including TTI or the TTI Account in his schedules and
(continued...)

## 2. The bankruptcy court did not err in finding that Mr. Taylor had a subjective intent to hinder or delay creditors.

Second, we must consider whether the court erred in holding that Mr. Taylor had a subjective intent to hinder, delay, or defraud his creditors.[5]

"A debtor's intent need not be fraudulent to meet the requirements of § 727(a)(2). Because the language of the statute is in the disjunctive it is sufficient if the debtor's intent is

---

[4](...continued) denying at the § 341(a) meeting that he was aware of the TTI Account). The record also reveals that Mr. Taylor admitted that he deposited personal funds into the TTI Account and made withdrawals for personal and family expenses, although the timing of those transactions is less clear. At a minimum, the bank statements provided by Ms. Good show that Mr. Taylor made personal deposits and withdrawals for personal expenses during the year prior to his bankruptcy filing, in satisfaction of § 727(a)(2)(A).

[5] At the conclusion of the trial, the bankruptcy court orally found that Mr. Taylor had an intent to hinder or delay his creditors and stated that it need not reach the question whether he had an intent to defraud. However, in its subsequent written findings (prepared by counsel), it stated that Mr. Taylor had "the intent to hinder, delay **and** defraud his creditors . . . ." (Emphasis added.) We need not resolve this discrepancy. The court's written order prevails over any oral findings. See Rawson v. Calmar S.S. Corp., 304 F.2d 202, 206 (9th Cir. 1962) (stating that the court's oral "comment is superseded by the findings of fact. The trial judge is not to be lashed to the mast on his off-hand remarks in announcing decision prior to the presumably more carefully considered deliberate findings of fact").

Further, the statute is written in the disjunctive, and we may affirm even without a finding of an intent to defraud. See In re Retz, 606 F.3d at 1200. It is clear that Mr. Taylor intended to hinder and delay creditors, so we need not consider whether the bankruptcy court erred in finding that he also had an intent to defraud.

9

to hinder or delay a creditor. Furthermore, 'lack of injury to creditors is irrelevant for purposes of denying a discharge in bankruptcy.'" In re Retz, 606 F.3d at 1200 (internal citations omitted); see Wolkowitz v. Beverly (In re Beverly), 374 B.R. 221, 242-43 (9th Cir. BAP 2007), aff'd in part, dismissed in part, 551 F.3d 1092 (9th Cir. 2008) ("In other words, proof of mere intent to hinder or to delay may lead to denial of discharge.").

Whether a debtor intended to hinder, delay, or defraud a creditor is a question of fact reviewed for clear error. Intent may be inferred from surrounding circumstances[6] or a course of conduct. In re Beverly, 374 B.R. at 243.

Mr. Taylor argues that he did not have any intent to hinder, delay, or defraud any creditor. However, he merely repeats or rephrases variations of his argument that the property was not his. He fails to discuss intent or the circumstantial evidence that supported a finding of intent.

---

[6] Various factors, called "badges of fraud," may constitute circumstantial evidence of intent. In re Beverly, 374 B.R. at 243.

> These factors, not all of which need be present, include (1) a close relationship between the transferor and the transferee; (2) that the transfer was in anticipation of a pending suit; (3) that the transferor Debtor was insolvent or in poor financial condition at the time; (4) that all or substantially all of the Debtor's property was transferred; (5) that the transfer so completely depleted the Debtor's assets that the creditor has been hindered or delayed in recovering any part of the judgment; and (6) that the Debtor received inadequate consideration for the transfer.

Emmett Valley Assocs. v. Woodfield (In re Woodfield), 978 F.2d 516, 518 (9th Cir. 1992).

10

Even though Mr. Taylor did not admit an intent to hinder or delay, the bankruptcy court could properly infer such intent from the surrounding circumstances and his course of conduct. See In re Beverly, 374 B.R. at 243. There was a close relationship between Mr. Taylor and his wholly-owned businesses; he personally was insolvent and deeply in debt; he did not disclose the TTI Account but transferred personal funds and funds of the Taylor Entities in and out of the TTI Account because his creditors were aware of and had liens against his accounts and the Taylor Entities' other accounts; he withdrew substantial sums of money from the TTI Account for personal use; he denied knowledge of TTI; he denied the existence of the TTI Account; and he only admitted the existence of TTI and the TTI Account when confronted by Ms. Good. See In re Woodfield, 978 F.2d at 518-19 (finding multiple badges of fraud, including "[t]he relationship between the Debtors and the corporation could not have been closer; the Debtors created and operated the transferee corporation. The transfer was admittedly made in anticipation of the bankruptcy filing. The partnership was admittedly in poor financial condition at the time, having defaulted on several obligations."); Beauchamp v. Hoose (In re Beauchamp), 236 B.R. 727, 731-32 (9th Cir. BAP 1999), aff'd, 5 F. App'x 743 (9th Cir. 2001) (debtor concealed a bank account, and although he later disclosed it, the concealment can be a ground for denial of discharge).

The bankruptcy court could infer from these facts that Mr. Taylor intended to hinder or delay his creditors from discovering and seizing the funds in the TTI Account by

11

concealing TTI and, most importantly, the TTI Account. The court found that Mr. Taylor, "with the intent to hinder, delay, and defraud his creditors, used the [TTI Account] as a depository for checks and monies received by [TCP, TTI], and defendant. Defendant also used the funds from this bank account for his personal expenses while having concealed its existence from his creditors by failing to disclose it in his bankruptcy petition." Accordingly, based on the circumstantial evidence, the bankruptcy court did not err in finding that Mr. Taylor had a subjective intent to hinder or delay creditors.

> **3.   Mr. Taylor's misstatements are not shielded by any "litigation privilege."**

With respect to § 727(a)(2)(A), Mr. Taylor argues that statements made during discovery cannot be used against him pursuant to the Noerr-Pennington doctrine and "litigation privilege." He contends that "[m]isrepresentations made during discovery is not grounds for later action against parties" and that "communications uttered or published in the courts or judicial proceedings are absolutely privileged." These arguments are frivolous.

The Noerr-Pennington doctrine relates to "[t]he First Amendment aspect of antitrust law," and "exempts bringing a lawsuit - that is, petitioning a court - from antitrust liability." Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1183 (9th Cir. 2005). This is not an antitrust case.

The "litigation privilege" that Mr. Taylor cites is a "privilege [that] is a bar to a defamation claim . . . ." Lisowski v. Davis (In re Davis), 312 B.R. 681, 690 (Bankr. D.

12

Nev. 2004). This is not a defamation case.

To quote the bankruptcy court, "I hate to use the word frivolous but I guess it really fits." We agree and find this defense of Mr. Taylor's false statements completely meritless.

**B. The bankruptcy court properly denied discharge pursuant to § 727(a)(4)(A).**

Section 727(a)(4)(A) provides that a court shall deny discharge if "(4) the debtor knowingly and fraudulently, in or in connection with the case . . . (A) made a false oath or account[.]" § 727(a)(4)(A).

"To prevail on this claim, a plaintiff must show, by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" In re Retz, 606 F.3d at 1196 (quoting Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)).

Mr. Taylor challenges the bankruptcy court's § 727(a)(4)(A) determination on the basis that the misstatements were not material.[7] "A fact is material if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property. An omission or

_____

[7] Mr. Taylor's discussion of § 727(a)(4)(A) only addresses the materiality of the false statements. Mr. Taylor waives any other arguments with respect to § 727(a)(4)(A). See Christian Legal Soc. Chapter of Univ. of Cal. v. Wu, 626 F.3d 483, 487 (9th Cir. 2010). He does not challenge the first, third, and fourth factors concerning the "false oath," "knowing," and "fraudulent" requirements.

13

misstatement that detrimentally affects administration of the estate is material." Id. at 1198 (internal citations and quotation marks omitted). "A false statement or omission may be material even if it does not cause direct financial prejudice to creditors." Fogal Legware of Switz., Inc. v. Wills (In re Wills), 243 B.R. 58, 63 (9th Cir. BAP 1999).

Mr. Taylor argues that his misstatements were not material because the TTI Account was not his property. While it is true that "omissions or misstatements concerning property that would not be property of the estate may not meet the materiality requirement of § 727(a)(4)(A)[,]" id., we have already rejected this argument as it pertains to the TTI Account, because some of the funds in the TTI Account were estate property.

Mr. Taylor also argues that the minimal amount in the TTI Account renders his omissions and misstatements immaterial. We disagree.

> In determining whether an omission is material, the issue is not merely the value of the omitted assets or whether the omission was detrimental to creditors. Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing[s] and financial condition.

6 Collier on Bankruptcy ¶ 727.04[1][b] (Alan N. Resnick & Henry J. Sommer, eds., 16th ed.); see In re Wills, 243 B.R. at 64 ("we conclude that a statement or omission relating to an asset that is of little value or that would not be property of the estate can be material if it detrimentally affects the administration of the estate"). We may also consider materiality in the context of

14

"(1) matters relating to the extent and nature of the debtor's assets; (2) inquiries relating to the debtor's business transactions or estate; (3) matters relating to the discovery of assets; [and] (4) the history of the debtor's financial transactions[.]" In re Wills, 243 B.R. at 62 n.3.

Mr. Taylor contends that his false statements were immaterial because the TTI Account only held $364.24 at the end of October 2013 and $251.58 at the end of December 2013. But we cannot merely look at a snapshot of the TTI Account on a particular date. Rather, Ms. Good proved that hundreds of thousands of dollars flowed in and out of the TTI Account in the months preceding and following the Taylors' bankruptcy filing. While the ending balances for the months of October and December 2013 may have been minimal, the funds deposited into and withdrawn from the TTI Account were not.

Furthermore, the flow of money in and out of the TTI Account not only reveals concealed assets, but also shows that Mr. Taylor was working and earning money. By concealing the TTI Account and the flow of his money, Mr. Taylor created a false impression about his financial condition and the value of his business. This information has a direct bearing on the administration of the bankruptcy estate and affects the creditors' and chapter 7 trustee's investigation into and evaluation of his pre-bankruptcy dealings and financial condition. See id. at 63. In this respect as well, Mr. Taylor's false statements were material.[8]

---

[8] Mr. Taylor cites a number of non-binding cases to support his argument that his false statements were immaterial. However, (continued...)

15

Mr. Taylor argues that his misstatements did not interfere with the administration of his estate. While the chapter 7 trustee apparently has not attempted to administer the TTI Account, Mr. Taylor's false statements nevertheless hindered creditors and interfered with the administration of the estate. "The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." In re Retz, 606 F.3d at 1196 (citation omitted); see Sergent v. Haverland (In re Haverland), 150 B.R. 768, 772 (Bankr. S.D. Cal. 1993) ("A trustee or creditor should not be required to make a costly investigation, as in fact the plaintiffs were forced to do, to uncover the existence of property which the debtor knowingly fails to disclose.").

Mr. Taylor concealed the existence of TTI in order to hide

[8](...continued) these cases are readily distinguishable and do not help Mr. Taylor's position. See Merena v. Merena (In re Merena), 413 B.R. 792, 817 (Bankr. D. Mont. 2009), aff'd, 2009 WL 4914650 (9th Cir. BAP Dec. 10, 2009) (finding the omission of lawsuits immaterial, because, unlike the present case, they "do not concern business dealings or the existence and disposition of [the debtor's] property"); Olympic Coast Inv., Inc. v. Wright (In re Wright), 364 B.R. 51, 75 (Bankr. D. Mont. 2007), aff'd, 2008 WL 160828 (D. Mont. Jan. 16, 2008), aff'd, 340 F. App'x 422 (9th Cir. 2009) (finding that the omission of business entities was not material because the businesses were all "defunct or valueless" and there was no evidence that "the omitted assets had any value to the estate"); Sprague, Thall & Albert v. Woerner (In re Woerner), 66 B.R. 964, 974 (Bankr. E.D. Pa. 1986) (holding that the debtor's omissions concerning his personal bank account were not material, where there was no evidence that funds were going in or out of the account). These cases are not relevant to the present case, where Mr. Taylor was still earning money and regularly caused substantial funds (including personal funds) to flow in and out of a concealed bank account in the name of a concealed business entity.

the TTI Account. At another time, he even denied that TTI had an account at Bank of America. These false statements directly concerned the extent of Mr. Taylor's assets, his business transactions, and the history of his financial transactions. They impeded the creditors and the orderly administration of the bankruptcy estate. As such, the court did not err in finding that the omissions and false statements were material.

## CONCLUSION

For the reasons set forth above, the bankruptcy court did not err in denying Mr. Taylor discharge under §§ 727(a)(2)(A), (2)(B), and (4)(A). Therefore, we AFFIRM.

17